**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JERRY ROBINSON,                                    :

                          Plaintiff,

    -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],
                          Defendant.           :

Case No. 3:07-cv-010

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

---

**REPORT AND RECOMMENDATIONS**

---

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work

which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on January 12, 2001, alleging disability from May 17, 2000, due to severe low back pain. (Tr. 101-03; 135).[2] Plaintiff's application was denied initially and on reconsideration. (Tr. 35-39; 41-44). A hearing was held before Administrative Law

---

[2] Plaintiff also filed an application for Disability Insurance Benefits (SSD) on January 17, 2001, for purposes of establishing Medicare coverage. (Tr. 309-11).

3

Judge Daniel Redmond, (Tr. 336-57), who determined that Plaintiff is not disabled. (Tr. 62-72). The Appeals Council granted Plaintiff's request for Review and remanded the matter for further proceedings. (Tr. 84-87).

On remand, Judge Redmond held a hearing, (Tr. 358-84), following which he again determined that Plaintiff is not disabled. (Tr. 14-25). The Appeals Council denied Plaintiff's request for review, (Tr. 3-5), and Judge Redmond's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Redmond found that Plaintiff met the insured status requirements of the Act for purposes of determining Medicare coverage through at least March 31, 2004. (Tr. 23, finding 1). Judge Redmond also found that Plaintiff has severe vertebrogenic disorders of the lumbar and lumbosacral spine and lumbar strain, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 24, findings 3, 4). Judge Redmond found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.*, finding 6. Judge Redmond then used section 201.28 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings 11, 12. Judge Redmond concluded that Plaintiff is not disabled and therefore not entitled to any benefits under the Act. (Tr. 25).

Plaintiff originally sustained a back injury in 1992, when he was involved in a vehicular accident. *See* Tr. 193. A January, 1998, MRI of Plaintiff's lumbar spine revealed degenerative disc disease most prominent at L4-5 and L5-S1. (Tr. 173). A September, 1996, MRI of Plaintiff's lumbar spine revealed degenerative disc desiccation at L4-5, a small disc protrusion

with annular tear producing mild sac effacement and some minimal effacement of the left L5 root and mild left lateral recess stenosis, degenerative disc desiccation at L5-S1 with some degenerative end plate marrow changes, and a small focal disc protrusion which produces some displacement and effacement of the right S1 root. (Tr. 174). Plaintiff consulted with neurosurgeon Dr. Moncrief in September, 1998, who opined that Plaintiff had lumbar strain and he recommended physical therapy. (Tr. 175). Plaintiff cancelled one physical therapy appointment and did not show for three other appointments and was discharged for non-compliance with the cancellation/no show policy. (Tr. 176-77).

The record contains a copy of treating physician Dr. Brown's office notes dated January 1, 1998, through October 20, 2004. (Tr. 178-90; 234-46; 285-302). Those records reveal that Dr. Brown provided Plaintiff with general medical care for various complaints including bronchitis, low back pain, muscle strain, spinal stenosis, asthma, anxiety, depression, chest pain, hyperlipidemia, allergic rhinitis, hypertension, multiple arthralgias, left wrist sprain, and torn cartilage of the right knee. *Id.*

A February 23, 2001, MRI of Plaintiff's lumbar spine revealed multilevel degenerative and spondylotic changes. (Tr. 191).

Examining physician Dr. Vitols reported on April 5, 2001, that Plaintiff had a slow and stiff gait, his neck motion was minimally restricted, there was tenderness to both cervicodorsal junctions, there was no evidence of myospasm, and that there was pain within the subacrominal space of the left shoulder and pain throughout range of motion. (Tr. 193-99). Dr. Vitols also reported that Plaintiff had some relative weakness of the left shoulder, there was no motor deficit, there was moderate myospasm to palpation and tenderness throughout all areas of the dorsolumbar

5

spine, that range of motion was decreased, straight leg raising at 75 degrees produced pain, reflexes were brisk and equal, that x-rays of the lumbar spine revealed significant disc space narrowing at the L5-S1 levels, some facet arthritis at all levels, and that the x-ray findings were considered advanced for chronological age. *Id.* Dr. Vitols noted that Plaintiff's diagnoses were lumbar sprain and strain with degenerative arthrosis, cervical strain and sprain, and chronic left shoulder strain. *Id.* Dr. Vitols opined that Plaintiff showed no impaired ability to use his upper extremities, that he would have difficulty performing various tasks on a sustained daily basis in reference to his back, that he would require a constant change of position and light duty restrictions, and would not be able to bend or twist at the waist on a regular basis. *Id.*

On September 28, 2001, Dr. Brown reported that Plaintiff was temporarily totally disabled effective for one year from September 28, 2001, through September 28, 2002. (Tr. 274).

Examining psychologist Dr. Flexman reported on October 10, 2001, that Plaintiff graduated from high school, his affect was dramatic, he cried when asked questions about his mood, was oriented and alert, and that his immediate attention span was good. (Tr. 209-13). Dr. Flexman also reported that Plaintiff's intellectual functioning was average, his recent memory was fair and remote memory was good, his judgment was fair, that obsessions appeared to be out of proportion with reality and somatization was present. *Id.* Dr. Flexman noted that Plaintiff's diagnoses were undifferentiated somatoform disorder and alcohol abuse, continuous, and he assigned Plaintiff a GAF of 65. *Id.* Dr. Flexman opined that Plaintiff's ability to understand simple one and two-step instructions was fair, his ability to sustain attention and concentration was fair, his ability to get along with others was fair, and that his ability to withstand the stresses of an ordinary work environment was fair. *Id.*

6

Dr. Brown reported on November 13, 2001, that Plaintiff's diagnoses were acute/chronic lumbar spine strain and severe asthma, that he was able to stand/walk for 2 hours in an 8-hour day and for 1 hour without interruption, sit for 4 hours in an 8-hour day and for 2 hours without interruption, lift/carry up to 10 pounds, and that he was unemployable. (Tr. 229-30).

A May 4, 2002, MRI of Plaintiff's lumbar spine revealed a stable disc bulge and superimposed protrusion at L4-5 level with a small amount of extruded disc material migrating caudally in the left paracentral spinal canal, slightly improved appearance of focal disc protrusion at L5-S1 with diminished extrusion migrating caudally in the right paracentral spinal canal. (Tr. 231-32). A chest x-ray performed on that same date was negative except for chronic appearing findings in the bilateral pulmonary apices. (Tr. 233).

Plaintiff sought treatment with a chiropractor in August, 2002. (Tr. 264-65). On November 8, 2002, the treating chiropractor reported that Plaintiff was temporarily and totally disabled through an estimated date of March, 2003. (Tr. 275).

Plaintiff sought mental health treatment at Eastway during the period July through October, 2002. (Tr. 249-63). On July 23, 2002, Plaintiff's counselor reported that Plaintiff's mood was depressed, he was talkative, he was oriented, his attention was focused, his memory was intact, and his insight and judgment were good. *Id.* Plaintiff's counselor identified Plaintiff's diagnosis as major depressive disorder, single episode, and she assigned Plaintiff a GAF of 65. *Id.*

On September 4, 2002, Eastway psychiatrist Dr. Sheppard reported that Plaintiff complained of feelings of apathy, lack of motivation, and depression, that he'd felt that way since 1999 or 2000, that he had seen a counselor in 1999, and that he graduated from high school, and that he started drinking at age 17. (Tr. 260-63). Dr. Sheppard also reported that Plaintiff exhibited no

7

increased or decreased psychomotor activity, became tearful when discussing his aunt's death, did not exhibit any abnormal behaviors or posturing, was cooperative, pleasant, and friendly, that his mood was depressed and his affect was restricted. *Id.* Dr. Sheppard noted that Plaintiff was mostly non-labile, that he was quite talkative, was oriented, and that his insight and judgment were fair to good. *Id.* Dr. Sheppard also noted that Plaintiff's diagnosis was major depressive disorder, single episode and mild. and she assigned Plaintiff a GAF of 65. *Id.*

Plaintiff received treatment from Dr. Amongero on three (3) occasions during the period January 16 through February 27, 2003. (Tr. 277-80). On January 16, 2003, Dr. Amongero reported that Plaintiff had mild tenderness along the lower lumbar paraspinals, his range of motion was fair, he was able to stand on his heels and toes, his sensory functions were intact, his strength was 5/5 bilaterally, his reflexes were 2+, and that straight leg raisings were positive for back pain. *Id.* On February 27, 2003, Dr. Amongero reported that a review of Plaintiff's new MRI confirmed the marked underlying degenerative changes which have been exacerbated by his multiple work injuries beginning in 1992 and that the best surgical option would be an anterior L5-S1 interbody fusion. *Id.*

On February 6, 2003, Plaintiff underwent an MRI of his lumbar spine which revealed no significant interval changes when compared to the May 4, 2002, MRI. (Tr. 281-82).

A September 8, 2003, MRI of Plaintiff's left wrist revealed synovial inflammatory disease likely related to seronegative rheumatoid-like arthritis, degeneration of the scapholunate ligament, and poor visualization of the ulnar styloid attachment of the triangulofibrocartilage. (Tr. 283-84).

Plaintiff consulted with neurosurgeon Dr. Moncrief on September 17, 2003, who

reported that Plaintiff had full strength in his lower extremities, no atrophy, a steady gait, point tenderness over the left sacroiliac joint, an S2 hypalgesia in the left leg, and positive straight leg raising at 20 degrees. (Tr. 304-06). Dr. Moncrief also reported that Plaintiff's reflexes were 1.5/5 at the Achilles and 1/5 over the right knee, and 2.5/5 over the left knee. *Id.* Dr. Moncrief recommended that prior to surgical intervention, Plaintiff try conservative treatment, including physical therapy, for his LS strain/sprain, lumbar facet disease, and sacroiliac dysfunction. *Id.*

Dr. Amongero reported on March 30, 2004, that he had not seen Plaintiff for a year, that he continued to have daily chronic low back symptoms, and that he wanted to try alternative treatments while he awaited Workers' Comp approval for anterior interbody cage. (Tr. 303).

On November 9, 2004, an MRI of Plaintiff's lumbar spine revealed very slight interval worsening in disease at the L5-S1 level with otherwise no significant interval change. (Tr. 307-08).

The medical advisor (MA) testified at the hearing on remand that there are six (6) MRI reports in the record going back to September, 1996, that they showed very slight interval change or worsening of the lumbar disease at the L5-S1 level, otherwise no significant changes. (Tr. 366-75). The MA also testified that Plaintiff definitely had degenerative disc disease at multiple levels and that it was worse at L4-L5 and L5-S1 and that it was apparently bad enough that Dr. Amongero wanted to do surgery, but it hadn't been done. *Id.* The MA testified further that Plaintiff had no evidence of any neurological deficits, that he did not meet or equal the Listings, that he was able to perform sedentary work and a sit/stand option not to leave the work station, and that if he had to do any bending, he could lock his lumbar spine into extension and could safely bend forward at the hips up to 45 degrees. *Id.* The MA testified that Plaintiff should avoid repetitive twisting,

9

concentrated exposure to cold, heat, wetness, humidity, vibration, heights, or hazardous areas, and that he should not use ropes, ladders, or scaffolds. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting his treating physician's opinion, rejecting his allegations of disabling pain, and by relying on the VE's testimony. (Doc. 7).

In support of his first Error, Plaintiff argues that the Commissioner erred by rejecting treating physician Dr. Brown's opinion and instead relying on the MA's opinion.

A treating physician's opinion is entitled to weight substantially greater than that of either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion.

*See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

In rejecting Dr. Brown's opinion, Judge Redmond determined that it was not supported by the clinical evidence or record and was not entitled to significant weight when compared to the MA's testimony. (Tr. 21). In addition, Judge Redmond determined that Dr. Brown did not support his opinion with any objective findings and that it was inconsistent with other evidence of record. *Id.*

Although Dr. Brown essentially opined that Plaintiff is disabled, he did not support that opinion with any objective findings. *See* Tr. 274. Additionally, Dr. Brown's office notes contain few objective clinical findings. For example, on February 7, 2000, Dr. Brown reported only mild lumbosacral spine tenderness, positive straight leg raising at 45 degrees, and a decreased Babinski. (Tr. 185). On February 17, 2004, Dr. Brown noted that Plaintiff had SI joint tenderness. (Tr. 294). The remainder of Dr. Brown's office notes contain few, if any, objective clinical findings which would support his opinion that Plaintiff is disabled.

While Plaintiff's treating chiropractor's opinion arguably supports Dr. Brown's opinion, a chiropractor is not an acceptable medical source, 20 C.F.R. §§404.1513; 416.913 and the Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he

11

required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

In contrast to Dr. Brown's opinion, although examining physician Dr. Vitols reported some positive clinical findings, he opined that Plaintiff was able to perform light duty work with the ability to change position constantly. In addition, consulting physician Dr. Amongero reported only mild tenderness and positive straight leg raisings. Over time, the objective test results of record, specifically the numerous MRIs showed very slight interval change or worsening of the lumbar disease at the L5-S1 level with otherwise no significant changes. Further, Plaintiff's activities are inconsistent with Dr. Brown's opinion. For example, Plaintiff drives, prepares his own food, does the dishes, laundry, vacuuming, and cleaning, cuts the grass, gardens, attends sporting activities, watches television, talks with friends, and babysits his own children. (Tr. 210; 344-46). Finally, Plaintiff reported to his counselor in August, 2002, that he had gotten a job through a temporary agency and that it turned out they were not going to pay him well enough, so he told the agency he was not interested in staying there long. (Tr. 253). Plaintiff also reported to his counselor that he was still trying to find work and that he would soon begin therapy so he could get "job ready". *Id.*

Under these facts, the Commissioner did not err by rejecting Dr. Brown's opinion or by relying on the MA's opinion as to Plaintiff's residual functional capacity.

Plaintiff argues in support of his second Error that the Commissioner erred by failing to find him entirely credible as to his allegations of disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner*

12

*of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. *Jones, supra*. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork. *Id.* The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity.

> Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones,* 945 F.2d at 1369-70, *quoting* S.S.R. 88-13.

While Plaintiff arguably has an impairment that could reasonably be expected to cause pain, specifically, severe vertebrogenic disorders of the lumbar, lumbosacral spine and lumber strain, the medical and other evidence of record does not support Plaintiff's allegations of disabling pain. For example, as noted above, there are few objective clinical findings of record. Similarly, Plaintiff's activities, as discussed above, are inconsistent with his allegations of disabling pain as are his job-status reports he made to his counselor. Finally, the record reveals that Plaintiff takes only a mild narcotic medication for pain and there are no indications that Plaintiff has ever complained to his physicians of side effects from his medications.

The Commissioner had an adequate basis for rejecting Plaintiff's allegations of disabling pain and therefore did not err in that regard.

In support of his third Error, Plaintiff alleges that the Commissioner erred by relying on the VE's testimony. Plaintiff's position is that the Commissioner erred because he did not ask the VE whether his testimony conflicted with the *Dictionary of Occupational Titles* (*DOT*) and, in fact, the VE's testimony did conflict with the *DOT*. Simply stated, Plaintiff claims that the jobs the VE identified in response to Judge Redmond's hypothetical question exceed Plaintiff's functional capacity and vocational background.

The *DOT* definitions are "simply generic job descriptions that offer the approximate *maximum* requirements for each position, rather than [the] range." *Wheeler v. Apfel,* 224 F.3d 891, 896-97 (8th Cir. 2000)(emphasis supplied). A VE is permitted to rely on sources other than the *DOT*

14

in evaluating a hypothetical. *See* 20 C.F.R. § 404.1566(d). In *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994), the Sixth Circuit rejected the plaintiff's argument that "only the *Dictionary of Occupational Titles* can be used as a basis for defining the characteristics of jobs occurring in the national economy." *Barker* concluded that "[i]t would be manifestly inappropriate to make the *Dictionary of Occupational Titles* the sole source of evidence concerning gainful employment." *Id.*

With these principles in mind, this Court concludes that the Commissioner did not err by failing to ask the VE if his testimony conflicted with the *DOT*. As noted above, the DOT contains generic job descriptions that offer the approximate *maximum* requirements for each position, rather than a range and the *DOT* is not the sole source of evidence concerning gainful employment. Indeed, a VE's testimony is an appropriate tool for the Commissioner to use in determining what work exists in the national economy that an individual is capable of performing. *See* 20 C.F.R. 404.1566(e).

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

15

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

August 3, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).